# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### SHREVEPORT DIVISION

| | |
|---|---|
| LYNDA JEANETTE HENSLEY | CASE NO. 5:18-CV-00653 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| ANDREW SAUL, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION | MAG. JUDGE KAREN L. HAYES |

## REPORT & RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

## Background & Procedural History

On, or about January 23, 2007, Lynda Hensley filed the instant applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income payments. *See* Tr. 86, 140-144). She alleged disability as of August 12, 2006, because of liver disease. (Tr. 169, 172). On May 3, 2007, the state agency granted Hensley's application(s) and found her disabled as of her alleged onset date. (Tr. 70-71).

In March 2015, the state agency initiated a continuing disability review ("CDR") to determine whether Hensley's disabling conditions had experienced medical improvement. *See* Tr. 198-202. On April 20, 2015, the state agency determined that, as of that month, Hensley had experienced medical improvement, and therefore, her benefits would terminate effective June 2015. (Tr. 73, 75-77). Hensley asked the state agency to reconsider its decision, and elected to continue

receiving benefits during the appeal process. (Tr. 79, 145-147). A disability hearing officer considered Hensley's request, but in a March 16, 2016, decision, found that her disability ceased as of April 2015. (Tr. 74, 83-94).

Thereafter, Hensley requested and received a January 11, 2017, hearing before an Administrative Law Judge ("ALJ"). (Tr. 29-69). However, in a July 25, 2017, written decision, the ALJ determined that Hensley's disability ended as of April 1, 2015, and that she had not become disabled again since that date. (Tr. 7-18).

Hensley appealed the adverse decision to the Appeals Council. On April 19, 2018, however, the Appeals Council denied Hensley's request for review; thus the ALJ's decision became the final decision of the Commissioner. (Tr. 1-3).

On May 16, 2018, Hensley sought review before this court. Succinctly restated, she contends that for various reasons, the ALJ's residual functional capacity assessment is not supported by substantial evidence and/or is tainted by legal error. The matter is fully briefed and ripe for decision.

## **Standard of Review**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925

2

F.2d 785, 789 (5th Cir. 1991).  A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination.  *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).  The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).

## Cessation of Disability

Federal law provides that "[i]n any case where an individual is or has been determined to be under a disability, **the case shall be reviewed** by the applicable State agency or the Commissioner of Social Security (as may be appropriate), for purposes of continuing eligibility at least once every 3 years . . ."  42 U.S.C. § 421(i) (emphasis added).  However, a disability recipient's benefits "may be terminated only if substantial evidence demonstrates *both* that 'there has been any medical improvement' *and* that 'the individual is now able to engage in substantial gainful activity.'"  *Hallaron v. Colvin*, 578 F. App'x 350, 353 (5th Cir. 2014) (citing 42 U.S.C. § 1382c(a)(4)(A)).  A finding of continuing disability is not required where the benefits recipient "fails, without good cause, to cooperate in a review of his or her entitlement or to follow prescribed treatment which would be expected [ ]to restore his or her ability to engage in substantial gainful activity . . ."  42 U.S.C. § 1382c(a)(4)(C)).

The Commissioner has prescribed regulations to implement the foregoing requirement. Specifically, a disability recipient's benefits will be terminated only where the Commissioner determines:

   a)      that there has been medical improvement in the individual's impairment or
           combination of impairments that is related to the individual's ability to work;[1]

---

[1] The regulations define "medical improvement" as "any decrease in the medical severity of [the individual's] impairment(s) which was present at the time of the most recent favorable medical decision that [the individual was] or continued to be disabled."  20 C.F.R. § 404.1594(b)(1).

      b)      or that one or more exceptions to medical improvement applies; and

      c)      in addition to a) or b), that the individual is currently able to engage in substantial gainful activity.

20 C.F.R. § 404.1594(a) (paraphrased).

In evaluating the above-enumerated issues, the Commissioner employs an eight-step sequential analysis:

1. Whether the individual is engaged in substantial gainful activity? (if so, the Commissioner will find that disability has ended).

2. Whether the claimant has an impairment or combination of impairments which meets or equals the severity of an impairment listed in Appendix 1? (If so, disability will be found to continue).

3. If not, has there been medical improvement?  (If so, step 4 is considered; if not, go to step 5).

4. If there has been medical improvement, is it related to the individual's ability to perform work?  (If not, go to step 5; if so, go to step 6).

5. If there was no medical improvement at step 3 or the medical improvement was not related to the individual's ability to work at step 4, does an exception apply?  (If not, disability continues; if one of the first exceptions to medical improvement applies, then go to step 6; if an exception from the second group of exceptions to medical improvement applies, then disability has ended).

6. If there has been medical improvement related to the individual's ability to do work or if one of the first group of exceptions to medical improvement applies, are the individual's current impairments in combination severe? (If not, disability has ended).

7. If the impairments are severe, is the individual able to engage in past relevant work?  (If so, disability has ended).

8. If unable to perform past relevant work, is the individual capable of performing other work, given vocational consideration and residual functional capacity? (If so, disability has ended; if not, disability continues).

20 C.F.R. § 404.1594(f) (paraphrased).

The review may cease and benefits may be continued at any point in the analysis that the Commissioner determines that there is sufficient evidence to find that the individual is still unable to engage in substantial gainful activity. *Id.*

In a continuing disability review applying the medical improvement standard, the government must, in all relevant respects, prove that the person is no longer disabled. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citations omitted).

## The ALJ's  Decision

### I.    Comparison Point Decision

The ALJ determined that the most recent favorable medical decision finding the claimant disabled was May 3, 2007.  (Tr. 11-12).   Thus, it served as the "comparison point decision" or "CPD." *Id*., *see also* 20 C.F.R. § 404.1594(b)(7).  The ALJ further determined that at the time of the CPD, the claimant suffered from the medically determinable impairments of alcoholic cirrhosis of the liver with end stage liver disease, which met listing 5.05A of 20 C.F.R. 404, Subpart P, Appendix 1. *Id.*

### II.    Steps One Through Four

The ALJ determined at step one of the sequential evaluation process, that the claimant had not engaged in substantial gainful activity throughout the relevant period.  (Tr. 12).  She found at step two that, as of April 1, 2015, the claimant's current medically determinable impairments included: mood disorder, obsessive-compulsive personality traits, alcohol use disorder in remission, hypertension, liver transplant, and hyperlipidemia. *Id.*  As of April 1, 2015, however, the claimant's impairments no longer met or medically equaled any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.  (Tr. 12-13).

The ALJ noted that at the CPD, the claimant had a diagnosis of alcoholic cirrhosis of the liver with end stage liver disease.  (Tr. 13).  In December 2007, however, the claimant received a liver transplant, without evidence of rejection.  *Id.*  Subsequent physical examinations were within normal limits.  *Id.*  Accordingly, the ALJ determined at steps three and four, that the claimant had experienced medical improvement as of April 1, 2015, and that the improvement was related to her ability to work.  *Id.*, *see also* 20 C.F.R. § 404.1594(c)(3)(i).

## III.    Step Six

Having found that the claimant experienced medical improvement related to her ability to work, the ALJ necessarily proceeded to step six of the sequential evaluation process.  At this step, she determined that the claimant suffered from the severe impairments of mood disorder, obsessive-compulsive personality traits, and alcohol use disorder in remission.  (Tr. 14).[2]  She concluded, however, that these impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.  (Tr. 12-13).

## IV.    Residual Functional Capacity

The ALJ next determined that, as of April 1, 2015, the claimant had the residual functional capacity ("RFC") to perform the full range of work at all exertional levels, but reduced by the following non-exertional limitations:  limited to simple, oral instructions; simple, routine, and repetitive tasks, but not at production rate, and simple, work-related decisions; frequent contact with supervisors and coworkers, but only occasional contact with the general public; and any time off task is accommodated by regular breaks.  (Tr. 14-17).

---

[2] She further found that the claimant's medically determinable impairments of history of liver transplant, hypertension, and hyperlipidemia were not severe impairments.  (Tr. 14).

### V.    Steps Seven and Eight

With the assistance of a vocational expert ("VE"), the ALJ concluded at step seven of the sequential evaluation process that the claimant was unable to perform past relevant work.  (Tr. 17-18).  Accordingly, she proceeded to step eight.  At this step, the ALJ determined that the claimant was an individual closely approaching advance age, with at least a high school education, and the ability to communicate in English.  *Id.*  Transferability of skills was not material to the decision.  *Id.*  The ALJ then observed that, given the claimant's vocational factors, and if she had an RFC that did not include any non-exertional limitations, then the medical-vocational guidelines would direct a finding of *not disabled* as of April 1, 2015.  20 C.F.R. § 404.1569; Rule 204.00, Appendix 2, Subpart P, Regulations No. 4.  *Id.*

However, because the claimant's RFC *did* include non-exertional limitations, the ALJ consulted a vocational expert ("VE") to determine whether, and to what extent her limitations eroded the occupational base for unskilled work at all exertional levels.  *Id.*  In response, the VE identified the representative jobs of meat clerk -- medium, *Dictionary of Occupational Titles* ("DOT") Code # 222.684-010; dishwasher -- medium, DOT Code # 318.687-010; and price marker - light, DOT Code # 209.587-034, that were consistent with the ALJ's RFC and the claimant's vocational profile.  (Tr. 17-18, 251, 252).[3]

Therefore, the ALJ concluded that the claimant's disability ended as of April 1, 2015.  (Tr. 18).

---

[3] The VE stated in his response to interrogatories that for the meat clerk, dishwasher, and price marker jobs, there were 115,649, 378,423, and 463,578 positions available nationally.  (Tr. 18, 251-252).  This incidence of jobs constitutes a significant number of jobs in the "national economy."  42 U.S.C. § 423(d)(2)(A); *Johnson v. Chater*, 108 F.3d 178, 181 (8th Cir. 1997) (200 jobs at state level and 10,000 nationally, constitute a significant number).

**Pertinent Medical Evidence and Third Party Statement**

The medical record in this case is relatively sparse.  On April 17, 2015, non-examining agency physician, Johnny Craig, M.D., reviewed the record, and noted that plaintiff had undergone a liver transplant in December 2007, and that since then, she had maintained normal liver function without evidence of rejection.  (Tr. 399).  Accordingly, he determined that she had no severe physical impairment.  *Id.*

On May 14, 2015, Hensley was seen by Chris Earnhardt, M.D., at Minden Family Medicine where she complained of extra stress because of insurance problems.  (Tr. 405).  She had been experiencing mood swings and crying spells.  *Id.*  Earnhardt diagnosed hypertension and mood swings likely secondary to worsening situation depression.  *Id.*  He increased her Zoloft prescription. *Id.*

Hensley returned to Dr. Earnhardt on June 23, 2015.  (Tr. 404).  She was feeling much better, and her moods were better since he had increased her Zoloft.  *Id.*  She was more productive and went around feeling better.  *Id.*  Earnhardt diagnosed hypertension – improved, and mood swings – improved.  *Id.*  She was to return in four to five months, and then every six months after that.  *Id.*

On September 9, 2015, non-examining agency physician, Hollis Rogers, M.D., reviewed the record, noted plaintiff's liver transplant, with no evidence of rejection, and opined that she had no severe physical impairment.  (Tr. 400).

At the request of the state agency, plaintiff saw Kimberly Law, M.D., M.P.H., on March 15, 2016, for a consultative psychiatric examination.  (Tr. 414-418).  Hensley stated that she last had a drink in 2006.  *Id.*  However, she still smoked one pack of cigarettes per day.  *Id.*  Hensley reported

that she became anxious easily, with crying spells triggered by thoughts of how she had let herself down.  *Id.*  She stated that she did not get along with people.  *Id.*  She also was worried about her memory, and described symptoms similar to aphasia.  *Id.*  However, Law did not observe this during the interview.  *Id.*  Rather, Hensley's memory appeared to be intact.  *Id.*  She was able to recall three out of three objects.  *Id.*  Her judgment, insight, and concentration all were fair.  *Id.*

Dr. Law diagnosed mood disorder, NOS; alcohol use disorder, in remission; and obsessive compulsive personality traits.  *Id.*  She characterized Hensley's disability level as "mild to moderate." *Id.*  Her immediate and long-term memory appeared to be intact.  *Id.*  Her attention skills also appeared to be intact.  *Id.*  She likely was able to maintain attention to simple and complex repetitive tasks for two hour blocks.  *Id.*  She also was able to maintain regular attendance and follow a schedule.  *Id.*  She likely would not be able to maintain a consistent pace independently over the course of a 40 hour workweek based on her statement that she felt completely exhausted after her current four-hour shift.  *Id.*  Law added that she was unable to speak to Hensley's physical ability to work full time, but no psychiatric symptoms appeared to preclude her from doing so.  *Id.*  She likely to respond appropriately to criticism from supervisors and able to maintain a professional relationship with her co-workers.  *Id.*  She likely would not be able to tolerate the stress and pressure associated with day-to-day work activity and demands if she were required to work outside of her regular schedule and her four hour "limit."  *Id*.  However, she likely would be able to adapt to social changes in a work setting.  *Id.*

On November 14, 2016, Hensley returned to Dr. Earnhardt for follow-up.  (Tr. 452). Hensley was feeling reasonably well, but she had some ringing in her ears that she had had since her liver transplant.  *Id.*  Her GERD was doing relatively well, with only occasional breakthrough

9

symptoms.  *Id*.  Earnhardt diagnosed tinnitus, hypertension, high cholesterol, and GERD.  *Id*.  He

filled out a disability form for Hensley, but advised her that his office did not "do disability."  *Id*.

Instead, he simply listed what they were treating her for.  (Tr. 452).

      The record also includes an August 31, 2016, letter from David W. Parker, plaintiff's store

manager at the Ace Hardware Store.  (Tr. 245-246).  He stated that he hired Hensley in July 2006 and

pledged to retain her during her struggle with liver failure.  *Id*.  After her transplant surgery, Hensley

was limited by the need for prolonged rest after any moderate exertion.  *Id*.  A reduction to a part-

time 4.5 hour shift resulted in a workload that she could maintain.  *Id*.  Because of her lack of

stamina, she was removed from floor duty and restricted to a sedentary office environment.  *Id*.

Physical limitations were the primary cause for changes to Hensley's schedule and duties.  *Id*.

Occasionally, however, she also was unable to quickly recall circumstances or procedures without

drawing a blank.  *Id*.  She was more successful in an environment that was task-oriented and

repetitive.  *Id*.

      On May 31, 2017, Parker reiterated the substance of his letter in a sworn statement, given in a

deposition format.  (Tr. 258-271).

## Analysis

      In her decision, the ALJ reviewed the available evidence, including the hearing testimony,

plaintiff's activities of daily living, treatment records, the impressions of the non-examining agency

physicians, the assessment of the consultative psychiatrist, Dr. Law, and the sworn statement from

plaintiff's former employer.  (Tr. 14-17).  Ultimately, however, the ALJ assigned great weight to the

opinions of the non-examining physicians who found that plaintiff did not have a severe physical

impairment.  *Id*.  She also assigned little weight to Dr. Law's statement that plaintiff likely would not

be able to tolerate the stress, pressure, and pace of a 40 hour work-week.  *Id.*  The ALJ noted that David Parker, plaintiff's former employer, seemed truthful and sincere, but even accepting his testimony as fully credible, it did not establish limitations arising from plaintiff's "medically determinable impairments" that were inconsistent with the ALJ's RFC determination.  *Id.*

Plaintiff challenges the ALJ's RFC on several grounds.  First, she argues that the ALJ erred by assigning "great weight" to the opinions of the non-examining agency physicians.  She asserts that the opinions of the non-examining physicians were limited to consideration of the effects of her end state liver disease and subsequent transplant; therefore, they did not consider the effects of her current medically determinable impairments.

However, the ALJ found that as of April 1, 2015, plaintiff's medically determinable impairments included:  mood disorder, obsessive-compulsive personality traits, alcohol use disorder in remission, hypertension, liver transplant, and hyperlipidemia.  (Tr. 12).  However, only hypertension, liver transplant, and hyperlipidemia constitute physical impairments.  Moreover, the agency physicians reviewed the record, but opined that plaintiff's *physical* impairments were not severe.  (Tr. 399-400).  Even plaintiff's treating physician, Dr. Earnhardt, did not diagnose any physical impairments that could have reduced plaintiff's capacity for work.  *See* discussion, *supra*. He certainly did not identify any limitations from his diagnoses.  Although plaintiff indicates that the agency physicians failed to explicitly mention her other impairments in their assessments, she does not detail any limitation of functioning attributable to hypertension, hyperlipidemia, or even GERD.

Plaintiff further argues that the ALJ's finding that she had severe impairments contradicts the findings of the agency physicians.  The court disagrees.  The ALJ found only that plaintiff's *mental* impairments were severe.  (Tr. 14).  She expressly found that plaintiff's *physical* impairments were not severe.  *Id.*  This is consistent with the opinions of the agency physicians.

The court observes that when at least one severe impairment is determined to exist, then *all* medically determinable impairments must be considered in the remaining steps of the sequential analysis. *See* 20 C.F.R. §§ 404.1545, 416.945.  Here, however, the medical record – as contrasted from plaintiff's own testimony and that of her witnesses (i.e., her sister and her former employer) -- does not support any limitations stemming from her physical impairments.

Plaintiff also faults the ALJ for assigning "little weight" to that portion of the consultative psychiatrist's report that was inconsistent with the ALJ's RFC.  Specifically, Dr. Law opined that plaintiff likely would not be able to maintain a consistent pace independently over the course of a 40 hour workweek based on plaintiff's statement that she felt completely exhausted after her current four-hour shift. *Id.*  Similarly, Law added that Hensley likely would not be able to tolerate the stress and pressure associated with day-to-day work activity and demands if she were required to work outside of her regular schedule and her four hour "limit." *Id.*

The Fifth Circuit has recognized that an "ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir.1987) (citation omitted).  Thus, "when good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony.

Here, the ALJ assigned little weight to the foregoing statements by Dr. Law because they were inconsistent with Law's relatively benign psychiatric findings, and because the limitations stemmed from plaintiff's subjective report of her symptoms, which were without objective support. (Tr. 15-16).  Stated differently, it is apparent that Dr. Law based these limitations on plaintiff's representations that her physical impairments limited her to a four hour workday.  Dr. Law, however, cautioned that she was unable to address plaintiff's physical ability to work full-time.  Moreover, the agency physicians found that plaintiff had no severe *physical* impairment.  Likewise, plaintiff's

12

treating physician did not indicate that plaintiff had an impairment likely to cause limitation of functioning, and did not identify any specific limitations. The absence of any medical evidence to support a limitation that would cause plaintiff to be exhausted and physically unable to work more than four hours per day provides good cause to discount the limitations identified by Law that were premised upon plaintiff's self-described physical limitations.

Plaintiff also argues that the ALJ should have determined whether Law's opinion was consistent with the "record as a whole." Indeed, one of the factors that the Commissioner uses to weigh medical opinions is consistency: "[g]enerally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion." 20 C.F.R. § 404.1527(c)(4). On the one hand, the medical record did not support Dr. Law's limitations that were premised upon physical impairments. On the other hand, Dr. Law's limitations were consistent with plaintiff's testimony and that of her witnesses. Here, of course, the ALJ credited the medical opinion evidence regarding the effects of plaintiff's physical impairments over those described by plaintiff and her employer. This weighing of the evidence remains within the province of the ALJ.

Plaintiff further contends that the ALJ erred by failing to consider the August 31, 2016, letter from her former employer, David Parker, and by failing to credit his later sworn statement. While an ALJ certainly is obliged to consider all of the record evidence,[4] she need not discuss every piece of evidence in the record. *Bordelon v. Shalala*, 41 F.3d 661 (5th Cir. 1994). Here, the ALJ acknowledged that she reviewed all of the evidence. (Tr. 14); s*ee Daniels v. Apfel*, 181 F.3d 97 (5th Cir. May 20, 1999) (unpubl.) (ALJ's failure to discuss expert opinion testimony did not constitute error because he stated that he considered the entire record). Furthermore, the ALJ discussed

---

[4] *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).

Parker's sworn statement, which reiterated many of the observations he made in his letter, but *under oath*.  The court cannot fault the ALJ for omitting a discussion of Parker's earlier letter that was made redundant by his subsequent statement under oath.

In addition, the ALJ stated that she did not find that Parker's attestations established limitations from plaintiff's "medically determinable impairments" that were inconsistent with the ALJ's RFC.  (Tr. 16-17).  Upon review, Parker testified that after plaintiff had her transplant, she had to remain on a part-time work schedule because of her stamina issues.  (Tr. 262-263).  Parker, however, did not establish that plaintiff's stamina-related issues were caused by her liver transplant.  Further, if anything, the ALJ may have meant to say that Parker's testimony was not inconsistent with the limitations arising from the *severe* impairments credited by the ALJ.  This interpretation is consistent with the entirety of the ALJ's decision.  Therefore, any error was harmless.  *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (ALJ's omission does not require remand unless it affected claimant's substantial rights).

Finally, plaintiff argues that the ALJ applied the incorrect standard for evaluating her statements.  The ALJ included in her decision the usual boilerplate that,

> [a]fter considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could have reasonably been expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the objective medical and other evidence for the reasons explained in this decision. Accordingly, these statements have been found to affect the claimant's ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence.

(Tr. 15).

Plaintiff asserts that the ALJ erred by requiring plaintiff's statements regarding the intensity, persistence, and limiting effects of her effects to be entirely consistent with the medical evidence.

14

The court disagrees.  The ALJ plainly partially credited plaintiff's statements – insofar as they were consistent with the objective medical and other evidence.  The ALJ need not follow formalistic rules in her credibility assessment.  *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).[5]  Moreover, the ALJ's decision regarding the credibility of plaintiff's complaints is entitled to considerable judicial deference if supported by substantial evidence.  *James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986); *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991).  Here, the ALJ's "credibility" determination satisfied the requirements of 20 C.F.R. § 404.1529, and is supported by substantial evidence.  *See Undheim v. Barnhart*, 214 Fed. Appx. 448 (5th Cir. Jan. 19, 2007) (unpubl.) (opinion as a whole gave sufficient reasons and documentation for the ALJ's credibility determination); *Cornett v. Astrue*, 261 Fed. Appx. 644 (5th Cir. Jan. 3, 2008) (unpubl.) (ALJ gave some weight to claimant's complaints; thus, claimant's arguments that his subjective complaints were not given enough weight proves unavailing); *Hernandez v. Astrue*, 2008 WL 2037273 (5th Cir. May 13, 2008) (unpubl.) (despite claimant's subjective allegations of pain, the ALJ gave "greatest weight" to treating physician's opinion).

## Conclusion

The evidence in this case was by no means uniform and could have supported a different outcome.  Such conflicts in the evidence, however, are for the Commissioner to resolve.  *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (citation omitted); *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971) (citation omitted).  This court may not "reweigh the evidence in the record, try the issues

---

[5] The Commissioner issued a new ruling that superseded and rescinded SSR 96-7p, effective March 28, 2016.  *See* SSR 16-3p, 2016 WL 1119029.  The purpose of the new ruling is to eliminate the use of the term "credibility" in the agency's sub-regulatory policy because the regulations do not use the term.

de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000).[6]  That is not to say that the Commissioner's decision is blemish-free, but procedural perfection in the administrative process is not required, and any errors do not undermine confidence in the decision.  *Mays v. Bowen*,  837 F.2d 1362, 1364 (5th Cir.1988).[7]

Upon review of the record, the undersigned finds that the Commissioner's determination  is supported by substantial evidence and remains free of legal error.  Accordingly,

IT IS RECOMMENDED that the Commissioner's decision be AFFIRMED, in its entirety, and that this civil action be DISMISSED with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen  (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS**

---

[6] Generally, courts "only may affirm an agency decision on the basis of the rationale it advanced below." *January v. Astrue*, No. 10-30345, 2010 WL 4386754 (5th Cir. Nov. 5, 2010) (citation omitted).  One exception to this rule, however, is harmless error, i.e. absent the alleged error or omission, there is "no realistic possibility" that the ALJ would have reached a different result. *Id*.  This exception is applicable here.

[7] Procedural improprieties "constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir.1988).

**REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 30th day of July 2019.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE

17